CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 3 1 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

ERNEST C. HOLLAND, JR.,        )
                              )       Civil Action No. 7:13cv00057
    Plaintiff,         )
                              )
v.                     )       **MEMORANDUM OPINION**
                              )
DR. D. MILLER, *et al.*,       )       By: Samuel G. Wilson
                              )       United States District Judge
    Defendants.        )

Ernest C. Holland, Jr., a Virginia inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983 claiming deliberate indifference to his serious medical needs[1] against eight defendants (correctional officials and medical personnel) associated with Keen Mountain Correctional Center (KMCC) and under Title II of the Americans with Disabilities Act (ADA) against two of those defendants.[2] Holland complains about the adequacy or total lack of treatment for a host of medical conditions but the gravamen of this complaint distills to his lack of treatment for a painful hernia and the actions of two correctional officers who required him to comply with normal restraint procedures on one occasion despite his problematic medical condition. The defendants that have been served with process have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Holland's complaint fails to allege a plausible claim

---

[1] Holland also asserts multiple state law claims, including negligence, gross negligence, medical malpractice, the unauthorized practice of medicine, and violations of the Virginians with Disabilities Act.

[2] Holland sued all the defendants in their individual capacities and C. Hawks, Eugene E. Whited, and Dr. D. Miller in their official capacities for purposes of his request for injunctive relief.

for relief against them.[3]  The court agrees, except as to defendant Dr. D. Miller, the attending

physician at KMCC, whom Holland alleges was at all relevant times "the physician and medical

care provider at KMCC, who made nearly all medically related decisions regarding [Holland]

while he was housed [there]," and who Holland alleges was deliberately indifferent in failing to

order surgery for Holland's painful hernia.  Accordingly, the court grants the various motions to

dismiss except the motion of that single defendant.  The court also dismisses Holland's claims

against the two yet unserved defendants under 28 U.S. C. §1915(e)(2)(B)(ii).

I.

The court summarizes the main thrust of Holland's complaint.  Holland has several

chronic medical conditions, including back problems, knee problems, acid reflux, and a hernia.

Holland's back problems resulted from an injury he sustained while housed in a Virginia

Department of Corrections (VDOC) facility in the mid-90s.  Since then, he has had multiple

evaluations and diagnostic studies and received treatment at various VDOC facilities from

multiple physicians for his back, and later for his left knee and a hernia.[4]  Some VDOC

physicians discussed surgery with Holland, including one physician who told Holland surgery

would worsen his back condition.  Some physicians recommended and/or ordered surgery,

including a physician at Powhatan Correctional Center on March 15, 2012.

The day after that recommendation, VDOC transferred Holland to KMCC, according to

Holland, in an effort to interfere with his treatment. Holland has named, Gail Jones, an employee

_____

[3] The moving defendants are Dr. D. Miller, Eugene A. Whited, C. Hawks, M. Coleman, P. Goins, and M. Phillips.  The other two defendants, Gail Jones and Correctional Officer Horne, have not been served.

[4] Holland was released from the VDOC in early 1999, but reoffended and returned to the VDOC a little under one year later.  Holland has not pled any facts about medical treatment he sought while released, but it appears any such treatment did not include surgery.

of the VDOC in the Central Classification Services Division in Richmond, Virginia as a defendant because he believes she was responsible for his transfer.

Upon his arrival at KMCC on March 16, 2012, Holland spoke with M. Coleman, an intake nurse, about his diagnosed medical problems and the surgery and treatment that had been ordered. He complains that Nurse Coleman did not assess Holland or schedule any appointments for him at that time, and has named her as a defendant.

The day after arriving at KMCC, March 17, 2012, Holland fell and further injured his back and knee. Holland had asked to shower and, as part of a normal security procedure, the two correctional officers who arrived to escort Holland, Phillips and Horne, required Holland to kneel, be placed in leg irons and behind-the-back handcuffs, and then stand and walk backwards out of the cell. Holland told them that he could not comply with the normal procedure because of his back and knee problems. They, nevertheless, required Holland to comply, and Holland fell as he attempted to stand. Holland has named both Phillips and Horne as defendants.

Immediately after the fall, Holland filed an emergency grievance. Phillips signed the emergency grievance receipt; called C. Hawks, a Licensed Practical Nurse;[5] and then returned to Holland's cell and asked him if it was a serious issue. Holland replied that it was serious, but Phillips nevertheless, according to Holland, told Nurse Hawks on the phone, "I don't think it's that serious. I think he's faking. Don't rush over here." Nurse Hawks answered Holland's grievance five hours later, checked Holland's vital signs, informed him his grievance did not

---

[5] Holland alleges Nurse Hawks is not actually a LPN. The court notes that the Virginia Department of Health Professions website has two LPNs with the first initial "C" and the last name "Hawks" and that "C. Hawks" has been identified as an LPN at KMCC in other cases. See, e.g., Land v. Clarke, No. 7:12cv354 (dismissed Oct. 15, 2012); Gardner v. Hawks, No. 7:10cv329 (dismissed July 29, 2010); McCauley v. Hawks, No. 7:07cv541 (dismissed Nov. 19, 2007). The correctness of that allegation is in no meaningful sense pivotal to the court's resolution of the federal issues before it.

meet the definition of an emergency,[6] and instructed him to "take it easy." Holland has named

Nurse Hawks as a defendant.

Two days later, March 19, 2012, Holland submitted a sick-call request citing all of his

described medical problems and also asking to be tested for Hepatitis C and HIV. According to

Holland, while waiting to be seen, his hernia "popped out" on March 23, 2012, causing him

severe pain. He then filed another emergency grievance, without explicitly referencing the

hernia episode:

> I am having very sharp pains in my abdomen! My right testical
> [sic] hurts very bad [sic] and there is a large knot on the right side
> of my pelvis. I have followed proper sick call procedures as
> instructed … yet it has been over a week and I have still not seen
> the doctor here or received any of the medications perscribed [sic]
> to me on 3-15-2012. The pill call nurse seems unconcerned when I
> told her I am in pain! Why is this medical dept. dening [sic] me
> medical care and percribed [sic] meds?

In response, P. Goins, a KMCC nurse, replied in writing that his grievance did not meet the

definition of an emergency and instructed Holland to use sick-call procedures. Holland has

named Nurse Goins as a defendant.

Dr. D. Miller, who Holland alleges to be the "physician and medical care provider at

KMCC, who made nearly all medically related decisions regarding [Holland]," saw Holland for

the first time five days later on March 28, 2012 (12 days after Holland's arrival at KMCC).

According to Holland, Dr. Miller talked to Holland through the cell door, did not do a physical

examination, and refused to provide any treatment. Holland had listed his hernia on his original

sick-call request form, but Dr. Miller required Holland to place another sick-call request to

address the hernia. Dr. Miller saw Holland again six days later. Dr. Miller did not recommend

---

[6] KMCC's emergency grievance form defined an emergency as "situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm."

or order surgery for any of Holland's conditions. Instead, Dr. Miller told Holland he would "never have the hernia removed" while he was in the VDOC and offered to treat him with a hernia belt and medication, including Flomax and a fiber supplement.[7] Holland later sent Dr. Miller a request form asking "why he would never order an appropriate treatment for the hernia." Eugene A. Whited responded, stating "according to the physician's assessment, the hernia belt should take care of it at this time." Whited, who Holland states falsely purports to be a "Registered Nurse Certified by the Board (RNCB)," conducts all administrative and appointment activities, other than sick-call, in a "triage-like manner." He also arranges to implement physicians' orders. Dr. Miller did not order surgery for Holland, and Whited did not schedule any surgical appointments. Holland has named Whited and Dr. Miller as defendants.

## II.

The court concludes that Holland's complaint states a plausible deliberate indifference claim against Dr. Miller concerning the treatment of Holland's hernia but not against the other defendants.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 105 (1976). To succeed on an Eighth Amendment cruel-and-unusual-punishment claim, a prisoner must prove two things: "(1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The objective component is satisfied by proving a serious medical condition. Id. The

_____

[7] Holland also alludes to a medication he takes for acid reflux, but does not identify it by name. He complains that KMCC requires a $2.00 co-pay for this medication.

subjective component is satisfied by showing a prison official's deliberate indifference. Id. Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference. Id.; see also Farmer v. Brennan, 511 U.S. 835, 837 (1994). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Borne , 896 F.2d 848, 851 (4th Cir. 1990) (citing Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). In this respect, the right to medical treatment is limited to that treatment that is medically necessary and not to "that which may be considered merely desirable." Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. As such, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although the court construes the allegations of *pro se* plaintiffs liberally, De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003), to survive review, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiffs must offer enough facts "to nudge[ ] their claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570, and from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is

entitled to relief. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 679. On a motion to dismiss, the court is not at liberty to judge the credibility of the plaintiff's factual allegations, unless they are fanciful. Rather, the court must assume that those allegations are true and judge the complaint accordingly.

With the above precepts in mind, the court concludes that Holland has stated a plausible deliberate indifference claim against Dr. Miller but not the remaining defendants. Holland has plausibly alleged that he suffered from a painful hernia condition, that his condition was in need of treatment, and that Dr. Miller, out of deliberate indifference, refused the treatment Holland needed. Though Dr. Miller may very well show Holland's allegations to be untenable, the issue is before the court on a motion to dismiss, not on a motion for summary judgment with affidavits showing that Dr. Miller denied treatment because in his opinion it was not medically justified.

Holland's allegations against the other defendants stand on different footing. Holland has essentially alleged that his hernia treatment (as well as other surgical procedures Holland alleges he believes to be necessary) are subject to Dr. Miller's orders. Under the circumstances, Holland has not plausibly shown that subordinate medical personnel or correctional officials are or have been deliberately indifferent in failing to provide treatment that Dr. Miller, the physician in charge, has not directed. He has not plausibly alleged facts showing that the remaining defendants acted with a sufficiently culpable state of mind. That is, Holland has not plausibly shown that they understood or actually drew the inference that the medical treatment he was receiving was deficient or that their actions were designed to interfere with his medical treatment.[8]

_____

[8] Though Holland's medical claims purport to encompass more than the treatment of his hernia condition, from medical records and exhibits Holland submitted with his complaint, Nurse Coleman simply gathered intake information from Holland when he arrived at KMCC, and that

III.

Holland claims that Phillips' and Horne's actions in requiring him to submit to customary restraint procedures during the incident in which he fell constituted deliberate indifference and amounted to excessive force in violation of the Eighth Amendment. But a violation of the Eighth Amendment does not result from negligence. The prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm existed and he must have actually drawn that inference. Here, Holland has not pled facts showing the officers acted with a sufficiently culpable state of mind.

There are no facts in Holland's complaint that remotely suggest that Phillips and Horne believed they, in fact, would be exposing Holland to unnecessary and wanton infliction of pain by simply requiring him to comply with normal restraint procedures or that they were deliberately indifferent to his condition after he fell. To the contrary, the facts Holland pleads show that Phillips believed Holland was "faking" his injuries, but despite that belief facilitated Holland's treatment by transmitting an emergency grievance and continuously checking in on him. In short, he has not pled plausible Eighth Amendment claims against the two officers.[9]

---

information did not indicate any new and serious medical need. Nurse Hawks responded to Holland's emergency grievance about his fall during which time she checked his vital signs, spoke with him, and determined his situation was not a medical emergency. Holland's second emergency grievance, to which Nurse Goins responded, included many complaints that Holland said had existed over a week, and Holland did not explicitly mention his hernia "popping out." In response, Nurse Goins determined his complaints did not qualify as emergencies, informed Holland of the same, and instructed him to use sick-call procedures.

[9] Holland also asserts an excessive force claim and a claim under the ADA against Phillips and Horne. As to the excessive force claim, Holland alleges without any supporting facts that their actions were sadistic and constituted excessive force. He has not pled any facts or circumstances to make such a claim plausible. The Eighth Amendment proscribes the deliberate use of excessive and unjustified force. See Whitley v. Albers, 475 U.S. 312, 327 (1986). Although the Eighth Amendment does not prohibit all application of force or infliction of pain, United States v. Gore, 592 F.3d 489 (4th Cir. 2010), it does prohibit unnecessary and wanton infliction of pain and suffering, which depends on whether the force was applied "in a good faith

## IV.

For the foregoing reasons, the court will dismiss all claims against all defendants except

Dr. Miller.[10]

**ENTER**: March 31, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." See, e.g., Wilkins v. Gaddy, 559 U.S. 34, 37 (2010); Wilson v. Seiter, 501 U.S. 294, 298-300 (1991). Nothing suggests that the defendants undertook normal security precautions for an improper purpose or maliciously and sadistically for the purpose of causing harm.

As to Holland's claim under Title II of the ADA against Phillips and Horne, Title II of the ADA does not create a cause of action against prison officials in their individual capacities. See Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999), and even if it did Holland surely has not otherwise plausibly pled disability discrimination.

[10] The court declines to exercise supplemental jurisdiction over Holland's multiple state law claims because they would substantially predominate over the remaining federal deliberate indifference claims, especially because only state law claims now remain as to six of the defendants. See 28 U.S.C. § 1367(c)(2).